UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

CHRISTY LYN GARGONI,

                      Plaintiff,

               -vs-

NANCY A. BERRYHILL,[1]

                      Defendant.

DECISION AND ORDER

18-CV-6115-CJS

_____

**APPEARANCES**

For Plaintiff:                      Justin David Jones, Esq.
                                       Kenneth R. Hiller, Esq.
                                       Law Offices of Kenneth Hiller, PPLC
                                       6000 North Bailey Avenue, Suite 1A
                                       Amherst, NY 14226
                                       (716) 564-3288

For the Commissioner:         Dennis J. Canning, Esq.
                                       Office of the General Counsel
                                       Social Security Administration
                                       601 E. 12th Street, Room 965
                                       Kansas City, MO 64106
                                       (816) 936-5830

                                       Fergus John Kaiser, Esq.
                                       Social Security Administration
                                       Office of General Counsel
                                       26 Federal Plaza, Room 3904
                                       New York, NY 10278
                                       (212) 264-2049

---

[1] "On January 23, 2017, Nancy A. Berryhill became the Acting Commissioner of Social Security. On March 6, 2018, the Government Accountability Office stated that, as of November 17, 2017, Ms. Berryhill's status violated the Federal Vacancies Reform Act, which limits the time a position can be filled by an acting official and '[t]herefore Ms. Berryhill was not authorized to continue serving using the title of Acting Commissioner...' Violation of the Time Limit Imposed by the Federal Vacancies Reform Act of 1988 Commissioner, Social Security Administration. Government Accountability Office. March 6, 2018. However, Ms. Berryhill continues to functionally lead the Social Security Administration from her position of record as Deputy Commissioner of Operations. Pursuant to Federal Rule of Civil Procedure 25(d), Nancy A. Berryhill is substituted for Carolyn W. Colvin, Acting Commissioner of Social Security, as the defendant in this suit." *Antal v. Berryhill*, No. CV 3:17-2097, 2018 WL 4030694, at *1 (M.D. Pa. Aug. 23, 2018)

Kathryn L. Smith, Ass't U.S. Att'y
U.S. Attorney's Office
100 State Street
Rochester, NY 14614
(585) 263-6760

## INTRODUCTION

**Siragusa, J.** Christy Lynn Gargoni ("Plaintiff") is appealing, pursuant to 42 U.S.C. § 405(g), an unfavorable decision by the Commissioner of Social Security ("Commissioner") on her application for Supplemental Social Security Income. Plaintiff claims she is disabled and qualifies for payments. An Administrative Law Judge ("ALJ") found she had the residual functional capacity ("RFC") to perform sedentary work and found she was not disabled. For the reasons stated below, this Court grants Plaintiff's application, ECF No. 11, and denies the Commissioner's motion, ECF No. 14. The case is remanded to the Commissioner pursuant to the fourth sentence of 42 U.S.C. § 405(g).

## SCOPE OF REVIEW

A decision that a claimant is not disabled must be affirmed if it is supported by substantial evidence, and if the ALJ applied the correct legal standards. *See* 42 U.S.C. § 405(g). "Where the Commissioner's decision rests on adequate findings supported by evidence having rational probative force, [the district court] will not substitute [its] judgment for that of the Commissioner." *Veino v. Barnhart*, 312 F.3d 578, 586 (2d Cir. 2002). This deferential standard is not applied to the Commissioner's application of the law, and the district court must independently determine whether the Commissioner's decision applied the correct legal standards in determining that the claimant was not disabled. *Townley v. Heckler*, 748 F.2d 109, 112 (2d Cir. 1984). Therefore, this Court first reviews whether the applicable legal standards were correctly applied, and, if so, then considers the substantiality of the evidence. *Johnson v. Bowen*, 817 F.2d 983, 985 (2d Cir. 1987).

## DISCUSSION

Plaintiff argues that the ALJ improperly applied the treating physician rule. Plaintiff filed her claim on January 12, 2015, therefore the applicable rule states in pertinent part as follows:

> Generally, we give more weight to medical opinions from your treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations. If we find that a treating source's medical opinion on the issue(s) of the nature and severity of your impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case record, we will give it controlling weight. When we do not give the treating source's medical opinion controlling weight, we apply the factors listed in paragraphs (c)(2)(i) and (c)(2)(ii) of this section, as well as the factors in paragraphs (c)(3) through (c)(6) of this section in determining the weight to give the medical opinion. We will always give good reasons in our notice of determination or decision for the weight we give your treating source's medical opinion.

20 C.F.R. § 416.927(c)(2), 82 FR 5880, Jan. 18, 2017; 82 FR 15133, Mar. 27, 2017.

Andrew B. Smith III, M.D., signed a Medical Opinion Statement (Physical) on November 8, 2016. R. 468–72. In the statement, Dr. Smith noted in the "[f]requency and length of contact" portion of the form, "seen every 2–6 months, I have followed Christy since 2/2016." R. 468. The Commissioner argues that he did not see her frequently enough to develop a physician/patient relationship, citing *Petrie v. Astrue*, 412 Fed. App'x 401, 405 (2d Cir. 2011). *Petrie* cited to an earlier case, in which the Court of Appeals wrote:

> The opinion of a treating physician is accorded extra weight because the continuity of treatment he provides and the doctor/patient relationship he develops place him in a unique position to make a complete and accurate diagnosis of his patient. *Aubeuf v. Schweiker*, 649 F.2d 107, 118 (2d Cir. 1981) (dissenting opinion); *Bastien v. Califano*, 572 F.2d 908 (2d Cir. 1978). This was not the case with Dr. Sauvigne, who only examined Mongeur once or twice. Since he had not seen Mongeur regularly, he had not developed a physician/patient relationship with him, and his opinion is not entitled to the extra weight of that of a "treating physician."

*Mongeur v. Heckler*, 722 F.2d 1033, 1039 n.2 (2d Cir. 1983). Plaintiff counters by citing to the Commissioner's treating physician rule, which states in part: "Generally, we will consider that you have an ongoing treatment relationship with an acceptable medical source when the medical evidence establishes that you see, or have seen, the source with a frequency consistent with accepted medical practice for the type of treatment and/or evaluation required for your medical condition(s)." 20 C.F.R. § 404.1527(a)(2) (Lexis Advance through the April 29, 2019 issue of the Federal Register. Title 3 is current through April 5, 2019). Plaintiff argues that although Dr. Smith only saw her twice, "he

performed examinations, ordered and reviewed brain MRIs, and prescribed different medications." Pl.'s Reply Mem. of Law 2. Moreover, Plaintiff also contends that the Commissioner's argument based on *Petrie* and *Mongeur* is a post hoc rationalization for the ALJ's decision since the ALJ, in his opinion, never concluded that Dr. Smith was *not* a treating physician. Quite the contrary, the ALJ noted that Dr. Smith's opinion was one "from a treating and examining physician…." R. 20.

The Court agrees with Plaintiff. The ALJ never concluded that Dr. Smith was not a treating physician, despite the few number of times he saw her. As the Second Circuit admonished, "[a] reviewing court 'may not accept appellate counsel's *post hoc* rationalizations for agency action.'" *Snell v. Apfel*, 177 F.3d 128, 134 (2d Cir. 1999) (quoting *Burlington Truck Lines v. United States*, 371 U.S. 156, 169 (1962)). Further, it is the nature of the relationship, not it's duration, that is important, as the Second Circuit wrote in *Schisler v. Bowen*, 851 F.2d 43, 45 (2d Cir. 1988):

> First, the Secretary would delete from the definition of "treating source" language stating that the physician's ongoing relationship with the claimant may be "of a short time span and [may] commenc[e] before or after the claimant has filed for disability benefits." He fears that this statement will make the treating physician rule "even more rigid and mechanical" than it already is. However, the challenged language merely insures that SSA adjudicators will focus on the nature of the ongoing physician-treatment relationship, rather than its length. *Cf. Mongeur v. Heckler*, 722 F.2d 1033, 1039 n.2 (2d Cir. 1983) (treating physician rule does not apply where no continuous physician/patient relationship developed). Far from making the rule more rigid and mechanical, the language forbids adjudicators from resorting to a test based on a legally fixed period of time rather than inquiring into the actual nature of the physician-patient relationship.

*Schisler v. Bowen*, 851 F.2d 43, 45 (2d Cir. 1988).

Dr. Smith diagnosed her as suffering from multiple sclerosis with a history of seizure, and listed her symptoms as including fatigue, numbness of both legs, leg weakness, muscle spasms, leg pain/neuralgia, urinary urgency. He also listed his clinical findings and objective signs, and his treatment regime. He determined that during a typical workday, Plaintiff would frequently experience pain or other symptoms serious enough to interfere with her attention and concentration necessary to perform even simple work tasks. R. 469. Nevertheless, he determined that Plaintiff was "capable of low stress jobs," and explained that she, "may be able to work in low stress job that is flexible in

allowing for flexible accommodations." Dr. Smith did not assess Plaintiff's ability to sit or stand or walk without pain (other than to say she could stand or walk for less than two hours during an eight-hour workday), but did indicate she would need to take unscheduled breaks during an eight-hour workday. Dr. Smith did not assess Plaintiff's ability to lift or carry, head movements, body movements, or grasping movements. R. 470–71. He concluded that she would probably miss about two days per month of work "as a result of the impairments or treatment." R. 471.

      The ALJ's assessment of Dr. Smith's medical opinion is as follows:

> The claimant's physician completed a medical opinion statement dated November 8, 2016 in which he opines that the claimant has a diagnosis of multiple sclerosis, with a history of seizure, and that her pain or other symptoms are severe enough to interfere with attention and concentration frequently during the workday (Exhibit 16F/1-2). The doctor further opined that the claimant is capable of low stress jobs, and may be able to work in a low stress job that will accommodate her (Exhibit 16F/2). He further opined that she is able to stand or walk less than 2 hours a day and will need a job that permits shifting positions between sitting, standing, and walking, as well as unscheduled breaks during the day, and that she has significant limitations involving reaching, handling, or fingering, and is likely to be absent from work about 2 days per month (Exhibit 16F/3-4). This opinion is from a treating and examining physician, but is limited and vague, does not support the opinions with explanation or evidence, and is not entirely consistent with the medical evidence of record. It is given some weight in the decision.

R. 20. Plaintiff argues that the ALJ's one-paragraph assessment did not properly apply the treating physician rule and did not contain good reasons for rejecting that opinion.

      Notwithstanding that the ALJ gave some weight to Dr. Smith's opinion, he did not incorporate any of Dr. Smith's limitations into his RFC determination. The ALJ found she could perform sedentary work, except that, "she cannot climb ladders or similar devices; can only occasionally climb stairs, balance, stoop, kneel, crouch, or crawling; cannot work in exposure to hazards such as heights, hazardous machinery, or slippery surfaces; and can do frequent but not constant handling and fingering activities bilaterally." R. 15. The decision says nothing about Dr. Smith's limitations on walking, or her frequent inability to concentrate due to pain, or that she would miss two days per month of work. On that last point, the vocational expert testified that missing one or more days per month of work would make it impossible for Plaintiff to be employed. R. 100.

5

In assessing the opinions of Dr. Smith, a treating physician, the ALJ was required to consider the length of time he treated Plaintiff, his expertise (he is a Neuroimmunology Fellow at the Multiple Sclerosis clinic at Strong Memorial Hospital, R. 27, 408, 480), and his explanatory notes on the medical opinion form. Plaintiff's main complaint is that her multiple sclerosis limits her ability to work. Pl.'s Mem. of Law 18, Oct. 19, 2018, ECF No. 11-1. Plaintiff's counsel maintained before the ALJ that because Dr. Smith only assessed those areas of functionality to which his expertise pertained, his medical statement has more veracity than if he had opined on areas not within his specialty. Counsel additionally argued that "the consultative examiner, Dr. Urinius[2] [phonetic], has indicated limitations that are not inconsistent with Dr. Smith and I think Dr. Smith should be given controlling weight in his answers." R. 102. Dr. Eurenis, a consultative examiner, wrote in his March 5, 2015, report, *inter alia*: "In my opinion, she is moderately limited in any exertional activity due to vertigo and instability. She is also limited in any activities in which a seizure would cause damage to herself or other[s]." R. 319.

Jessica Robb, M.D., wrote in her May 5, 2016, examination notes about Plaintiff: "Acute onset bilateral leg numbness 2 weeks ago, with remaining numbness. Off DMT for about 9 months despite multiple enhancing lesions MRI brain summer 2015 and recommendation to change to more potent disease modifying therapy," and "33 y.o. F with aggressive MS with recent cord relapse who seems to now understand the importance of starting a potent DMT. Given her JC - status, Tysabri is a very reasonable option." R. 603.

The ALJ found that Dr. Smith's report was limited, vague, and unsupported. The ALJ did not explain what he meant by limited, nor did he explain what he meant by vague. The form Dr. Smith used contained definitions for "rarely," "occasionally," and "frequently." R.469. Thus, when Dr. Smith indicated the Plaintiff would "frequently" experience pain or other symptoms during the workday that would be severe enough "to interfere with attention and concentration needed to perform even simple work tasks," it meant that between 34% and 65% of the workday she would experience pain severe

---

[2] A reference to Karl Eurenius, M.D., an internal medicine physician. R. 320.

enough to interfere with her attention and concentration and that the pain would interfere with her ability to perform even simple tasks. The ALJ does not explain how Dr. Smith's report in that respect, or any other respect, is vague. "References to physicians' opinions as 'subjective' or 'vague' or not 'tied' to other evidence (without any attempt to explain how that is so) simply do not suffice as 'good reasons' for declining to credit the opinions of treating physicians, particularly in the absence of any examination of the 20 C.F.R. §404.1527(c) factors." *Thomas v. Colvin*, 302 F. Supp. 3d 506, 511 (W.D.N.Y. 2018).

The ALJ criticized Dr. Smith's report stating, "this opinion . . . does not support the opinions [sic] with explanation or evidence, and is not entirely consistent with the medical evidence of record." R. 20. The Second Circuit held that "a treating physician's 'failure to include this type of support for the findings in his report does not mean that such support does not exist; he might not have provided this information in the report because he did not know that the ALJ would consider it critical to the disposition of the case.'" *Rosa v. Callahan*, 168 F.3d 72, 80 (2d Cir. 1999) (quoting *Clark v. Commissioner*, 143 F.3d 115, 118 (2d Cir. 1998)).

In that regard, the ALJ failed to comment on the notations Dr. Smith wrote in his report. Dr. Smith was part of the University of Rochester, and the Record contains examination reports dated September 8, 2015, by George Sirotenko, M.D., also of the University of Rochester, evaluating Plaintiff's multiple sclerosis. R. 402. Dr. Sirotenko conducted a physical examination and reviewed her past examinations in Nevada and a prior image of her brain, and then concluded: "Christy's history and imaging are clearly consistent with multiple sclerosis . . . . Given her amount of disability already, we had recommended treating her MS aggressively with Tysabri." R. 405. On October 7, 2015, Harold Lesser, M.D., Ph.D., also with the University of Rochester, examined Plaintiff and convinced her to try the Tysabri, and then wrote, "I have contacted Dr. Andrew Smith, the MS fellow at the MS clinic, and he will likely see her later this month to discuss the details of Tysabri therapy." R. 408. On April 25, 2016, Dr. Sirotenko's nurse, Ann B. Leitten, saw Plaintiff again and noted that Dr. Sirotenko and Dr. Lesser had referred her to the MS Clinic in October. She did not visit that clinic by April and reported

7

her feet were numb. R. 409. Her report, cosigned by Dr. Lesser, concluded, "Christy is experiencing new symptoms, and we have ordered a thoracic spine MRI to evaluate for new lesions. We have again referred her to the MS clinic to consider treatment with Tysabri. We discussed the importance of her keeping her appointments, and she verbalized understanding of this." R. 410–11.

Notes from the University of Rochester MS Clinic, edited by Lawrence M. Samkoff, M.D., and dated March 26, 2015, show he ordered a magnetic resonance image of Plaintiff's head and cervical spine. R. 490. Plaintiff returned to the University of Rochester MS Clinic on June 25, 2015, where Dr. Samkoff saw her. R. 522. Among other symptoms, Plaintiff reported to him that "[s]he has poor sleep (4 hours/night) because of diffuse body pain . . . . She has been to pain management: has tried amitriptyline, nortriptyline, cymbalta, gabapentin, with either intolerance or ineffective." R. 522.

Dr. Smith saw Plaintiff on May 5, 2016, as noted in his ambulatory encounter notes. R. 602. His assessment included the following:

> Christy Gargoni is a 33 yo woman with relapsing MS not on a disease modifying therapy presenting with new clinical relapse of transverse myelitis with symptomatic decreased pin (intact touch and stable vibration) in both legs and left leg weakness. There is a possible new lesion in the mid thoracic cord, not obvious. She had numerous contrast enhancing lesions on Tecfidera in 6/2015 and stopped at that time, but did not start Tysabri as recommended at that time. Given her overall lesion burden and relapsing activity over the course of the past year, we have recommended escalation of disease modifying therapy to Tysabri. We discussed administration of this treatment (monthly infusions) and potential risks including potentially fatal brain infection related to JC virus (progressive multifocal leukoencephalopathy - PML) and allergic reactions. Her prior JC virus antibody testing last year was negative. We will repeat today, if this test is negative her risk of PML over the course of the next 2 years is likely less than 1:10,000.

R. 602.

On November 6, 2016, Dr. Smith saw Plaintiff at the University of Rochester MC Clinic.[3] He noted her clinical presentations from 2010 through 2015, and thoroughly reviewed her history. R. 477. He related that Plaintiff's insurance company denied coverage for Tysabri, and that she had not

---

[3] Though the other doctors at the University of Rochester referred to it as the MS Clnic, the letterhead on Dr. Smith's report indicates the formal name is "Rochester Multiple Sclerosis Center, University of Rochester." R. 477.

filled out forms for free/reduced cost. *Id*. Among other symptoms, Dr. Smith made note that Plaintiff "has difficulty walking for prolonged periods of time due to fatigue in her legs." R. 477. He assessed her gait and noted, "[s]tandard gait was antalgic,[4] favoring the R ankle and knee (old). She was unable to tandem walk. Timed 25-foot walk (sec): 4.6 (last 6.8 seconds)." R. 479.

The ALJ's paragraph rejecting Dr. Smith's medical opinion makes no mention of his and his colleagues' examinations and assessments of Plaintiff. R. 20. Contrary to the Commissioner's regulation, the ALJ did not include most of Dr. Smith's listed limitations in his RFC determination. Dr. Smith noted Plaintiff would frequently experience "pain or other symptoms severe enough to interfere with attention and concentration needed to perform even simple tasks," could stand or walk less than two hours, need to shift positions at will, needed unscheduled breaks during the workday, had significant limitations with reaching, handling, or fingering, and would be absent about two days per month for treatments, or because of impairments. R. 469–71. As indicated above, the ALJ's RFC limited her to sedentary work, except that: "she cannot climb ladders or similar devices; can only occasionally climb stairs, balance, stoop, kneel, crouch, or crawling; cannot work in exposure to hazards such as heights, hazardous machinery, or slippery surfaces; and can do frequent but not constant handling and fingering activities bilaterally." R. 15. The ALJ did not give a good reason for rejecting Dr. Smith's restrictions. As the court observed in *Dioguardi v. Comm'r of Soc. Sec.*, 445 F. Supp. 2d 288 (W.D.N.Y. 2006):

> Under the Commissioner's own rules, if the ALJ's "RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted." Soc. Sec. Ruling 96–8p (1996). "While the ALJ is not obligated to 'reconcile explicitly every conflicting shred of medical testimony,' [s]he cannot simply selectively choose evidence in the record that supports [her] conclusions." *Gecevic v. Secretary of Health & Human Servs.*, 882 F. Supp. 278, 286 (E.D.N.Y.1995) (quoting *Fiorello v. Heckler*, 725 F.2d 174, 176 (2d Cir. 1983)). The plaintiff here is entitled to know why the ALJ chose to disregard the portions of the medical opinions that were beneficial to her application for benefits. *Torres*, 2005 WL 147412, at 7, 2005 U.S. Dist. LEXIS 937, at *19–20 (citing *Gecevic*, 882 F. Supp. at 285–286).

---

[4] Antalgic: "marked by or being an unnatural position or movement assumed by someone to minimize or alleviate pain or discomfort (as in the leg or back)." "antalgic." Merriam-Webster Online Medical Dictionary, 2005. http://www.merriam-webster.com/medical/antalgic (Apr. 17, 2019).

*Dioguardi*, 445 F. Supp. 2d at 297; *accord Dotson v. Berryhill*, No. 17-CV-129-FPG, 2018 WL 3064195 (W.D.N.Y. Jun. 21, 2018).

## CONCLUSION

Because the Court finds that the ALJ failed to comply with the Commissioner's treating physician rule, 20 C.F.R. § 416.927(c)(2), and SSR 96-8p (1996), the Commissioner's decision denying benefits is reversed and the case is remanded to the Commissioner pursuant to the fourth sentence of 42 U.S.C. § 405(g).

IT IS SO ORDERED.

DATED: May 10, 2019
Rochester, New York

/s/ Charles J. Siragusa
CHARLES J. SIRAGUSA
United States District Judge